UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

SILVANA AGOGLIA, individually,

v.

AQUACHILE INC., a Florida Corporation,

Defendant.

_____/

## **COMPLAINT**

1.      Plaintiff, SILVANA AGOGLIA (referred to as "Plaintiff" and "AGOGLIA"), is an individual residing in Miami-Dade County, Florida.

2.      Defendant, AQUACHILE INC., a Florida Corporation, (collectively referred to as "AQUACHILE" and "Defendant"), has at all times material to this Complaint owned and operated an international business specializing in producing and selling farm raised salmon and tilapia with Defendant's corporate office based at 5200 Blue Lagoon Drive, Suite 750, Miami, Florida 33126 in Miami-Dade County, Florida, within the jurisdiction of this Court.

3.      AGOGLIA brings this action for damages in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of attorneys' fees, and costs, against AQUACHILE for alleged violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.* (Title VII), and the Fair Labor Standards Act ("FLSA"), as amended, 29 U.S.C. §216(b).[1]

4.      Jurisdiction is conferred on this Court by 28 U.S.C. §1332, §1337, and §1367.

5.      A substantial part of the events giving rise to this action, occurred in Miami-Dade County, within the jurisdiction of the United States District Court for the Southern District of

---

[1] Attached hereto is a signed Consent to Join of Plaintiff AGOGLIA.

Florida.

6.      At all times material to this Complaint, including but not necessarily limited to during the years 2019, 2020, 2021, and 2022, AQUACHILE was engaged in an industry affecting commerce and had fifteen (15) or more employees for each working day in each of twenty (20) or more weeks in the current or preceding calendar year.

7.      At all times material to this Complaint, including but not necessarily limited to during the years 2019, 2020, 2021, and 2022, AQUACHILE had two (2) or more employees who have regularly sold, handled, or otherwise worked on goods and/or materials that had been moved in or produced for commerce.  In this regard, AGOGLIA alleges based upon information and belief and subject to discovery, that at all times material to this Complaint, AQUACHILE employed two (2) or more employees who, *inter alia*, regularly: (a) handled and worked on office equipment— including but not limited to computers, copier/scanner, printers, telephones—that were goods and/or materials moved in or produced for commerce; (b) handled and worked with commercial office supplies—including but not limited to paper, pens, and UPS, FedEx, and United States Postal Service shipping materials—that were goods and/or materials moved in or produced for commerce; (c) handled, worked with, and sold tilapia and salmon produced in one on more locations outside the United States and sold internationally and throughout the United States, which fish products constitute goods and/or materials moved in or produced for commerce; and (d) processed and participated in electronic bank and/or transfers and transactions across Florida and other State lines throughout the United States and foreign countries including but not limited to Chile.

8.      Based upon information and belief, the annual gross sales volume of AQUACHILE was in excess of $500,000.00 per annum at all times material to this Complaint, including but not

necessarily limited to during the years 2019, 2020, 2021, and 2022.

9.     At all times material to this Complaint, including but not necessarily limited to during the years 2019, 2020, 2021, and 2022, AQUACHILE has constituted an enterprise engaged in interstate commerce or in the production of goods for commerce as defined by the FLSA, 29 U.S.C. §203(s).

10.     On or around June 17, 2019, AGOGLIA began working for AQUACHILE as a non-exempt Customer Service Representative in Defendant's Miami office located at 5200 Blue Lagoon Drive, Suite 750, Miami, Florida 33126 based upon a base salary of approximately $884.00 per week for Forty (40) hours of work per week, plus potential individual and company performance bonuses.

11.     At all times material to this action, AQUACHILE was an employer within the meaning of Title VII, 42 U.S.C. §2000e-(b).

12.     At all times material to this action, AGOGLIA was an employee of AQUACHILE within the meaning of Title VII, 42 U.S.C. §2000e-(f).

13.     Between approximately late June 2019 and late January 2020, AGOGLIA's primary duties as a Customer Service Representative for AQUACHILE consisted of the following non-exempt duties:  (i) responding to customer inquiries and selling Defendant's merchandise to customers as a sales representative assistant and backup; (ii) processing the shipping of orders including tracking issues and working on shipping errors; (iii) preparing invoices and bills; and (iv) closing out inventory during the final week at the end of each month.

14.     The primary job duties performed by AGOGLIA for AQUACHILE during the three (3) year statute of limitations period between late June 2019 and late January 2020 *did not* involve the exercise of independent judgment nor were Plaintiff's primary duties administrative tasks that

involved exercising discretion for Defendant's general business operations.

15.     Likewise, the primary duties and work performed by AGOGLIA for AQUACHILE during the three (3) year statute of limitations period between late June 2019 and late January 2020 required little skill and no capital investment, as these duties *did not* substantially include managerial responsibilities or the exercise of independent judgment with respect to matters of significance in the operation of Defendant's administration or production operations.

16.     Instead, AGOGLIA devoted virtually all of her working time for AQUACHILE during the three (3) year statute of limitations period between late June 2019 and late January 2020 to performing ministerial and clerical tasks in Defendant's customer service department.

17.     Finally, the primary duties of AGOGLIA for AQUACHILE during the three (3) year statute of limitations period between late June 2019 and late January 2020 *was not* management of any department(s) or job sites of Defendant's international farming and wholesale seafood business, and Plaintiff had no authority for and did not regularly interview, hire, discipline, or fire employees of AQUACHILE.

18.     During the three (3) year statute of limitations period between late June 2019 and late January 2020, despite AQUACHILE having hired AGOGLIA on the basis that her work hours would be Monday through Friday between 8:30 a.m. and 5:00 p.m., AGOGLIA regularly worked as a non-exempt Customer Service Representative for AQUACHILE anywhere from Five (5) to Seven (7) days per week with (a) regular start times on week days as early as approximately 7:00 a.m. and stop times on week days regularly as late as approximately 8:00 p.m.—along with stop times during inventory week as late as approximately 9:30-10:00 p.m.—and (b) working remotely for AQUACHILE including weekend hours on Saturday-Sunday with hours between approximately 8:00 a.m. and 6:00 p.m., regularly working as many as Seventy (70) hours per week

between approximately June 17, 2019 and January 22, 2020.

19.     However, AQUACHILE failed to pay time and one-half wages for all of the overtime hours AGOGLIA worked for Defendant in excess of Forty (40) hours per week between approximately June 17, 2019 and January 22, 2020 as a result of *inter alia*: (a) Defendant paying Plaintiff paid a salary for Forty (40) hours per week without time and one-wages for each and every hour worked in excess of 40 hours per week as required by the FLSA, 29 U.S.C. §207; and (b) AQUACHILE failing to maintain contemporaneous or accurate records of all of the *actual* start times, stop times, number of hours worked each day, and total hours actually worked each week by AGOGLIA during each week within the three (3) year statute of limitations period between approximately June 17, 2019 and January 22, 2020 as required by the FLSA, 29 C.F.R. §516.2(a)(7).

20.     On or around November 25, 2019, because of an "audit" AQUACHILE purportedly conducted of work performed by AGOGLIA and other AQUACHILE employees between January 2019 and late November 2019, AQUACHILE's Chief Financial Officer, Freddy Olcese, notified AGOGLIA in a letter attached hereto as Exhibit A that Defendant was paying AGOGLIA "additional compensation" in the amount of $2,744.08 for what Defendant identified was 82.72 overtime hours that Defendant calculated AGOGLIA was owed at the time and one-half rate of $33.17 per hour from a regular rate of $22.12 per hour [$33.17/hour x 82.72 Unpaid OT hours = $2,744.08].

21.     However, although AQUACHILE required AGOGLIA, as a condition of continuing her employment with Defendant in November 2019, to sign Olcese's November 25, 2019 letter regarding AQUACHILE's purported back-wage overtime payment in the amount of $2,744.08 for 82.72 overtime hours during what was a maximum of 22.57 work weeks of

AGOGLIA's employment between approximately June 17, 2019 and November 25, 2019, Plaintiff did not work merely 82.72 overtime hours per week during that Twenty-Two (22) week period [82.72 Unpaid Overtime Hours/22.57 work weeks = an average of 3.66 OT hours per week].

22. Rather, subject to discovery, based upon AQUACHILE paying AGOGLIA average gross weekly wages of approximately $884.00 per week for Forty (40) hours of work per week between approximately June 17, 2019 and January 22, 2020 and Plaintiff being owed an average of approximately Twenty-Five (25) uncompensated overtime hours per week from Defendant during a total of approximately Twenty-Four (24) work weeks between approximately June 17, 2019 and January 22, 2020 at the time and one-half rate of $33.17/hour [$22.12/hour regular rate x 1.5 = $33.17/hour], Plaintiff's unpaid overtime wages total **$19,890.00** [$33.17/hour x 25 Unpaid OT hours/week x 24 work weeks = $19,890.00].

23. Based upon information and belief, AQUACHILE failed to maintain contemporaneous and accurate records of all of the *actual* start times, stop times, number of hours worked each day, and total hours actually worked each week by AGOGLIA between approximately June 17, 2019 and January 22, 2020 as required by the FLSA, 29 C.F.R. §516.2(a)(7).

24. At all times material to this Complaint, AQUACHILE had knowledge of the hours worked in excess of Forty (40) hours per week by AGOGLIA during each week within the three (3) year statute of limitations period between approximately June 17, 2019 and January 22, 2020 but Defendant nonetheless willfully failed to compensate Plaintiff for all of her actual overtime hours worked for Defendant, instead accepting the benefits of the work performed by AGOGLIA without the overtime compensation required by the FLSA, 29 U.S.C. §207.

25. The complete records reflecting the compensation paid by AQUACHILE to

AGOGLIA for each week within the three (3) year statute of limitations period approximately June 17, 2019 and January 22, 2020 are in the possession, custody, and/or control of Defendant.

26.     Throughout AGOGLIA's employment as a Customer Service Representative with AQUACHILE in Defendant's Miami office between approximately June 17, 2019 and January 22, 2020, AGOGLIA was subjected to harassment, discrimination, and disparate treatment because of her sex/gender, Female, by AQUACHILE's Regional Director, Raul Squadritto, and Operations Manager, Alfonso Noguera, both of whom are Males, and Defendant's Chilean employees, including but not necessarily limited to Squadritto and Noguera talking down to AGOGLIA and conduct which included:

> (i) Squadritto telling AGOGLIA that "the men of the company" are the "ones who make the decisions," not Female employees;

> (ii) when AGOGLIA asked Squadritto about Defendant's requirements for Plaintiff to become a Sales Representative, a position she was interested in, Squadritto told AGOGLIA that it was Defendant's goal to "just have men" in the Sales Representative position so Plaintiff should inquire further about or apply to become a Sales Representative;

> (iii) when AQUACHILE's Male employees traveled from Chile to work in Defendant's Miami office, these employees regularly touched AGOGLIA without her consent and spoke to Plaintiff in sexually suggestive ways, which unwanted conducted AGOGLIA objected to and expressly complained about to Noguera However, Noguera told AGOGLIA "that is normal in Chile" and no action was taken to help AGOGLIA; and

> (iv) in response to AGOGLIA asking work related questions which she was required to address with Squadritto and Noguera, Plaintiff was told to spoken down and told "be quiet" and to "just follow the rules"; and

> (v) AGOGLIA being required to work longer hours than AQUACHILE's Male, sales employees, as if somehow Plaintiff, a Female employee, was inferior.

27.     In approximately July 2019, AGOGLIA complained to Noguera about the sex/gender harassment and discrimination Plaintiff explained to Noguera she was being subjected to because of Plaintiff's sex/gender, Female.

28.     However, AQUACHILE failed to take prompt and remedial action to address AGOGLIA's July 2019 internal discrimination complaint.

29.     Similarly, after Noguera subsequently informed Monica Loria, a Manager in what AGOGLIA understood was a then-recently formed Human Resources department by Defendant, about Plaintiff's internal gender discrimination complaint and AGOGLIA asked Loria directly in approximately September 2019 if Loria had taken any action to address AGOGLIA's complaint, Loria told Plaintiff:  "That's just the way Chileans behave," as part of which Loria characterized the concerns AGOGLIA expressed as not being "a serious complaint," such that Loria told AGOGLIA she should "get used to it" because its "part of their [Chileans] culture."

30.     On Wednesday, January 22, 2020, Noguera called AGOGLIA into his office on behalf of Squadritto and, along with Loria present, notified AGOGLIA that her employment with AQUACHILE was being terminated because of a purported "restructuring."

31.     At all times material to this action between June 2019 and January 2020, AGOGLIA satisfactorily performed her essential job duties as a Customer Service Representative for AQUACHILE and in fact was an exemplary employee for Defendant.

32.     When AQUACHILE terminated AGOGLIA's employment on January 22, 2020, AQUACHILE offered AGOGLIA a "Severance Agreement and General Release," Exhibit B, that Noguera handed to AGOGLIA and told Plaintiff she had to immediately sign in order to receive a nominal severance payment from Defendant in exchange for AGOGLIA releasing AQUACHILE from any and all claims Plaintiff had against AQUACHILE, which Agreement AGOGLIA refused to sign.

33.     The reason proffered by AQUACHILE in January 2020 for AGOGLIA's termination was false and known to be false by AQUACHILE at the time of Plaintiff's termination,

as it was a pretext for unlawful gender/sex discrimination and retaliation against AGOGLIA in violation of Title VII.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

34.     On or around September 14, 2020, AGOGLIA filed a Charge of Discrimination against AQUACHILE with the United States Equal Employment Opportunity Commission (EEOC) and the Florida Commission on Human Relations (FCHR), EEOC Charge No. 15D-2020-01256, in which AGOGLIA alleged that AQUACHILE discriminated and retaliated against her because of her gender/sex, Female, in violation of Title VII and the Florida Civil Rights Act.  A copy of AGOGLIA'S Charge of Discrimination is attached hereto as Exhibit C.

35.     On or around November 30, 2021, the EEOC issued a Dismissal and Notice of Right to Sue to AGOGLIA in connection with EEOC Charge No. 15D-2020-01256, a copy of which is attached hereto as Exhibit D.

36.     AGOGLIA has exhausted all administrative remedies and all conditions precedent to the institution of this action have either occurred or been waived.

**COUNT I**
**GENDER/SEX DISCRIMINATION AND SEXUAL HARASSMENT**
**IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**

Plaintiff, SILVANA AGOGLIA, reasserts and reaffirms the allegations of Paragraphs 1 through 36 as if fully set forth herein and further states that this is an action against AQUACHILE INC. for gender/sex discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.*

37.     Title VII of the Civil Rights Act of 1964, as amended, provides that it is unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such

individual's . . . sex . . ." 42 U.S.C. §2000e-2(a)(1).

38.     Throughout the course of AGOGLIA's employment with AQUACHILE between approximately June 17, 2019 and January 22, 2020, AQUACHILE subjected AGOGLIA to: (a) unwelcome harassment because of Plaintiff's gender/sex, Female, by Defendant's management employees, including but not necessarily limited to AQUACHILE's Regional Director, Raul Squadritto, and Operations Manager, Alfonso Noguera, which harassment was severe and pervasive, and which constituted a hostile work environment; and (b) disparate treatment because of her gender/sex, Female, all in violation of in violation of 42 U.S.C. §2000e-2(a)(1) & (2).

39.     The gender/sex harassment discrimination against AGOGLIA because of her gender/sex, Female, by AQUACHILE management personnel between June 2019 and January 2020 was sufficiently severe and pervasive as to alter the terms, conditions and privileges of AGOGLIA'S employment with AQUACHILE.

40.     AQUACHILE's management knew or should have known between June 2019 and January 2020 that the gender/sex harassment and discrimination against AGOGLIA because of Plaintiff's gender/sex, Female, was illegal but Defendant failed to take prompt and corrective action to address the unlawful harassment, discrimination, and disparate treatment against AGOGLIA.

41.     As a result of AQUACHILE's failure to take prompt remedial action in response to AGOGLIA'S internal discrimination complaints in approximately July 2019 and September 2019, AGOGLIA was subjected to further gender/sex harassment and discrimination because of Plaintiff's gender/sex, Female, between July 2019 and January 2020.

42.     On January 22, 2020, AQUACHILE terminated AGOGLIA'S employment, a motivating factor behind which termination was Plaintiff's gender/sex, Female, in violation of 42 U.S.C. §2000e-2(a)(1) & (2).

43.     AQUACHILE's violations of AGOGLIA'S rights under Title VII of the Civil Rights Act of 1964, as amended, were intentional and were done with malice and reckless disregard for AGOGLIA'S rights as guaranteed under the laws of the United States.  As such, AGOGLIA is entitled to punitive damages against AQUACHILE pursuant to 42 U.S.C. §1981a(a)(1).

44.     AGOGLIA has suffered lost earnings, emotional distress, loss of self-esteem, and other damages as a direct result of AQUACHILE's violations of 42 U.S.C. §2000e-2(a)(1) & (2).

45.     Pursuant to 42 U.S.C. §2000e-5(k), AGOGLIA is entitled to recover her reasonable attorneys' fees and costs from AQUACHILE.

WHEREFORE, Plaintiff, SILVANA AGOGLIA, demands judgment against Defendant, AQUACHILE INC., for back pay, employment benefits, other compensation including bonuses, compensatory damages, including, but not limited to, damages for mental anguish, loss of dignity, and any other intangible injuries, punitive damages, equitable relief, interest, costs, attorney's fees, expert fees and such other and further relief as this Honorable Court deems proper.

## COUNT II
## RETALIATION IN VIOLATION OF TITLE VII
## OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §2000e-3(a)

Plaintiff, SILVANA AGOGLIA, reasserts and reaffirms the allegations of Paragraphs 1 through 36 as if fully set forth herein and further state that this is an action against AQUACHILE INC. for Retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a).

46.     Pursuant to 42 U.S.C. §2000e-3(a), "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees …. because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

47.     Between approximately late June 2019 and January 2020, AQUACHILE subjected AGOGLIA to: (a) unwelcome harassment because of Plaintiff's gender/sex, Female, by Defendant's management employees, including but not limited to AQUACHILE's Regional Director, Raul Squadritto, and Operations Manager, Alfonso Noguera, which harassment was severe and pervasive, and which constituted a hostile work environment; and (b) disparate treatment because of her gender/sex, Female, all in violation of in violation of 42 U.S.C. §2000e-2(a)(1) & (2).

48.     In on or around July 2019 and September 2019, AGOGLIA complained to AQUACHILE's management about the sex/gender harassment and discrimination Plaintiff believed she was subjecting to in AQUACHILE's Miami office because of Plaintiff's sex/gender, Female.

49.     AGOGLIA reasonably and in good faith believed she was being subjected to unlawful gender/sex harassment and disparate treatment because of her gender/sex, Female, when AGOGLIA complained to AQUACHILE's management in or around July 2019 and September 2019.

50.     When AGOGLIA opposed, objected to, and complained between approximately July 2019 and January 2020 about what she in good faith believed was gender/sex harassment and discrimination against Plaintiff because of her gender, Female, AGOGLIA engaged in protected

activity within the meaning of 42 U.S.C. §2000e-3(a).

51.    The fact that AGOGLIA engaged in activity protected by the Title VII was a motivating factor in AQUACHILE's termination of Plaintiff's employment on January 22, 2020, in violation of 42 U.S.C. §2000e-3(a).

52.    AQUACHILE's termination of AGOGLIA's employment on January 22, 2020 because of AGOGLIA's good faith gender/sex discrimination complaints and objections to AQUACHILE's management's harassment, disparate treatment, and discrimination was unlawful retaliation in violation of 42 U.S.C. §2000e-3(a).

53.    The reason proffered by AQUACHILE in January 2020 for the termination of AGOGLIA's employment was false and was a pretext for unlawful retaliation against AGOGLIA in violation of 42 U.S.C. §2000e-3(a).

54.    AQUACHILE's retaliatory action against AGOGLIA in violation of Plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended, was intentional was done with malice and reckless disregard for AGOGLIA's rights as guaranteed under the laws of the United States.  As such, AGOGLIA is entitled to punitive damages against AQUACHILE pursuant to 42 U.S.C. §1981a(a)(1).

55.    AGOGLIA has suffered lost earnings, emotional distress, loss of self-esteem and other damages as a direct result of AQUACHILE's unlawful retaliation.

56.    Pursuant to 42 U.S.C. §2000e-5(k) and 1988(b), AGOGLIA is entitled to recover her reasonable attorneys' fees and costs from AQUACHILE.

WHEREFORE, Plaintiff, SILVANA AGOGLIA, demands judgment against Defendant, AQUACHILE INC., for back pay, employment benefits, other compensation including bonuses, compensatory damages, equitable relief including but not limited to front pay, injunctive relief,

interest, attorney's fees, costs, expert fees and such other and further relief as this Honorable Court deems proper.

## COUNT III
## OVERTIME VIOLATIONS OF THE FAIR LABOR STANDARDS ACT

Plaintiff, SILVANA AGOGLIA, reasserts and reaffirms the allegations set forth in paragraphs 1 through 36 above and further states that this is an action against AQUACHILE INC. for alleged overtime wages pursuant to the Fair Labor Standards Act, 29 U.S.C. §216(b).

57.     Pursuant to 29 U.S.C. §207(a), AGOGLIA is entitled to be paid time and one-half of her applicable regular rate(s) of pay for each and every hour she worked for AQUACHILE in excess of Forty (40) hours per work week during the three (3) year statute of limitations period between approximately June 17, 2019 and January 22, 2020.

58.     However, AQUACHILE failed to pay AGOGLIA time and one-half overtime wages for all of the actual hours she worked in excess of Forty (40) hours per week for Defendant during the three (3) year statute of limitations period between approximately June 17, 2019 and January 22, 2020.

59.     At all times material to this Complaint, AQUACHILE had actual notice that its compensation and record keeping practices did not provide AGOGLIA with time and one-half wages for all of her actual overtime hours worked between approximately June 17, 2019 and January 22, 2020 based upon, *inter alia*: (a) Defendant facilitating the creation, oversight, and administration of compensation practices, timekeeping practices, and employment policies governing AGOGLIA which knowingly and willfully did not provide time and one-half compensation for all hours worked in excess of Forty (40) hours per week; (b) the primary duties performed by AGOGLIA for AQUACHILE being non-exempt in nature; and (c) AQUACHILE's failure to maintain accurate records of the actual start times, stop times, number of hours worked

each day, and total hours worked each week by AGOGLIA for each work week within the three (3) year statute of limitations period as required by the FLSA, 29 C.F.R. §516.2.

60.     By reason of the intentional, willful, and unlawful acts of AQUACHILE, AGOGLIA suffered damages plus incurring costs and reasonable attorneys' fees.

61.     AQUACHILE did not have a good faith basis for its failure to pay time and one-half wages for all of the actual overtime hours worked by AGOGLIA between approximately June 17, 2019 and January 22, 2020, as a result of which AGOGLIA is entitled to the recovery of liquidated damages from AQUACHILE pursuant to 29 U.S.C. §216(b).

62.     AGOGLIA has retained the undersigned counsel to represent her in this action, and pursuant to 29 U.S.C. §216(b), AGOGLIA is entitled to recover from AQUACHILE all reasonable attorneys' fees and costs incurred as a result of Defendant's violations of the FLSA.

WHEREFORE, Plaintiff, SILVANA AGOGLIA, demands judgment against Defendant, AQUACHILE INC., for the payment of all unpaid overtime compensation, liquidated damages, reasonable attorneys' fees and costs of suit, and for all proper relief including prejudgment interest.

## JURY TRIAL DEMAND

SILVANA AGOGLIA demands trial by jury on all issues so triable.

Dated:  January 31, 2022                    Respectfully submitted,

By:     **KEITH M. STERN**
                Keith M. Stern, Esquire
                Florida Bar No. 321000
                E-mail:  employlaw@keithstern.com
                LAW OFFICE OF KEITH M. STERN, P.A.
                80 S.W. 8th Street, Suite 2000
                Miami, Florida 33130
                Telephone:  (305) 901-1379
                Attorneys for Plaintiff

# EXHIBIT A

 

November 25, 2019

Silvana Agoglia

Dear Silvana:

As we have previously discussed, AquaChile, Inc. (the "Company") has conducted an audit of its payroll and other work records and has determined that you are entitled to additional compensation in the gross amount of $2,744.08 for the period commencing January 1, 2019 through the current pay period. Please note that the back wages are subject to federal income tax withholding, social security tax, and Medicare tax. This payment, along with the tax deductions, will be reported on your Form W-2 for the year 2019.

By accepting the payment, you agree that: (a) you have reviewed the calculation of hours prepared by the Company that is the basis of the calculation of the back wages payment and that it is a fair and accurate representation of the hours that I have worked during the period referenced above; and (b) the payment fairly compensates me for such hours that I worked during the above referenced period. In exchange for accepting the payment, you agree that you are not entitled to any additional compensation under the Fair Labor Standards Act (FLSA) and that you release the Company from any and all claims for any unpaid wages or compensation. You also acknowledge that you have not filed, and you will not hereinafter file, any complaints, charges, claims, suits, or actions against the Company with respect to any wage claims.

We value you as an employee and appreciate the time and effort that you commit to the Company. Likewise, we are committed to ensuring that you are treated fairly during the term of your employment with the Company.

If you have any questions or concerns, please feel free to contact me.

Sincerely,

Freddy Olcese
CFO – AquaChile, Inc./RFA, Inc.

Accepted: _____   .   Date: 11/25/19 .

Silvana Agoglia

Attachment

AquaChile, Inc.
5200 Blue Lagoon Drive, Suite 750
Miami, FL 33126

Ph (786) 522-8400
Fax (786) 522-8405

| EMPLOYEE NAME | TOTAL OVERTIME | Salary | Hourly Rate | Overtime Due | Bonus 1 5/17/19 | Bonus 2 7/12/19 | Total Bonus Paid |
|---|---|---|---|---|---|---|---|
| Silvana Agoglia | 82.72 | $46,000 | $22.12 | $2,744.08 | | $1,000.00 | $1,000.00 |

# EXHIBIT B

          

January 22, 2020

VIA HAND DELIVERY
Silvana Agoglia

Re:     *Severance Agreement and General Release*

Dear Silvana:

Effective January 22, 2020, (the "Termination Date") the employment relationship between you and Aquachile, Inc. (the "Company") is hereby terminated. This letter discusses the Company's willingness to enter into a Severance Agreement and General Release ("Severance Agreement") with you which, if you sign a general release of all claims against the Company, would provide you a severance package with an additional period of time during which salary and benefits would continue to be paid by the Company. This letter sets forth the terms and conditions of that Severance Agreement and that mutually agreed upon severance package from the Company. To receive that severance package, you must sign this Severance Agreement that, as described in paragraph seven (7) of this Severance Agreement, releases all claims you may have against the Company. You have ten (10) calendar days from the today's date to sign and return this Severance Agreement to my attention.

Please read the rest of this letter carefully. Should you desire to accept the severance package described herein, please sign a copy of this Severance Agreement where noted on the last page and return it to me by no later than **January 31, 2020**.

1. Severance Package

Your termination of active employment is effective January 22, 2020. Subject to the execution of this Severance Agreement, you will be paid a lump sum of **$1,795.77** (the equivalent of two (2) weeks of your current salary of $46,690.00) (the "Severance Payment") to be paid on February 7th, 2020. The Severance Payment will be subject to normal deductions for taxes, benefit program contributions, and other payroll deductions.

2. PTO

As of your Termination Date, you have three (3) days of accrued, but unused PTO. This amount will be added to the Severance Payment.

3. COBRA

Your current health insurance coverage shall remain in effect through January 31, 2020. After such date, you may elect COBRA (Consolidated Omnibus Budget Reconciliation Act of 1985) continuation of medical and dental coverage for up to 18 months. The specific costs and details of the COBRA premium that you would be required to pay if you elect such COBRA coverage will be provided to you by the Company's health insurance provider.

---

AquaChile, Inc.
5200 Blue Lagoon Drive, Suite 750
Miami, FL 33126

Ph (786) 522-8400
Fax (786) 522-8405

Scanned with CamScanner

4. 401(k) Plan

To the extent that you have participated in the Company 401(k) Plan, your vested account balance in the Plan will be distributed to you in accordance with the terms of the Plan. The Company's 401(k) Administrator will send you the forms that are to be used to make your distribution election as allowed under the Plan.

5. Breach Of Agreement

If you violate any of your obligations under this Severance Agreement, the Company may demand the return of the Severance Payments already made and you agree to return such Severance Payment upon such demand.

6. Neutral Reference and Unemployment Compensation

The Company's Human Resources Department will provide a neutral reference for you to any prospective employer who shall contact the Human Resources Department seeking a reference. Additionally, if you should apply for unemployment benefits and should the Company be requested to complete any documents in connection therewith, the Company shall complete such necessary documents but will not contest your receipt of such benefits.

7. General Release

a. In consideration for the benefits and promises set forth herein, you, on behalf of yourself, your heirs, legal representatives, successors-in-interest, and assigns, do hereby irrevocably and unconditionally release, acquit, and forever discharge the Company, including all of its past, present, and future parents, subsidiaries, affiliated companies, and owners and all of their past, present, and future predecessors, successors, assigns, agents, directors, officers, employees, representatives, attorneys, and insurers and all persons acting by, through, under, or in concert with any of them (collectively "Releasees"), and each of them, of and from all claims, complaints, actions, causes of action, rights, demands, debts, obligations, damages, or accountings of whatever nature, in law or in equity, which you may have, in the past may have had, or in the future may have against Releasees, or any of them, by reason of, arising out of, or in any way related to your employment with the Company, the termination of that employment, or any other matters of whatever nature, whether known or unknown, occurring prior to the date of your execution of this Severance Agreement (herein collectively "Claims").

b. The Claims being released include, but are not limited to, all claims of discrimination or concerning other employment practices prohibited under federal, state, or local laws and include, without limitation, claims arising under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Employee Retirement Income Security Act, the Civil Rights Act of 1866, the Equal Pay Act, the Rehabilitation Act, the Fair Labor Standards Act, the National Labor Relations Act, the Fair Credit Reporting Act, Executive Order 11246, the state or federal Family and Medical Leave Acts, and all claims under any state, local, or municipal EEO Act, statute, or ordinance (all as amended), and claims growing out of any other legal or statutory restrictions on the Company's right to terminate your employment.

c. The Claims being released include, but are not limited to, all common law claims, including any express or implied contractual claims, and any tort claims including, but not limited to, claims for fraud, negligent or intentional misrepresentation, invasion of privacy, loss of consortium, assault, battery, conspiracy, bad faith, negligent hiring or supervision, violation of a public policy, a covenant of good faith and fair dealing, interference with prospective economic advantage,

2

Scanned with CamScanner

tortious interference with contract, promissory estoppel, intentional or negligent infliction of emotional distress, intentional or negligent acts of personal injury, and wrongful discharge.

d. You are also waiving your right to any monetary recovery if such claims are pursued on your behalf. You confirm that (to your knowledge) you have suffered no injuries or occupational diseases in connection with your employment with the Company that may be compensable under any state worker's compensation laws. You confirm that you do not have any pending claim, charge, or suit against the Releasees or any of their employees in any federal, state, or local court or administrative agency.

## 8. Covenant Of Confidentiality

a. You acknowledge that during your employment with the Company, you have had access to certain business, financial, and other information of the Company which is not made readily available to the public, including, without limitation, marketing, advertising and promotional ideas, surveys and strategies, technology, budgets, business plans, vendor lists, research, financial, purchasing, and employment data and information, and costs, profits, market, sales, products, product lines, key personnel, pricing policies, operational methods, customers, customer requirements, suppliers, plans for future developments, and other business affairs and methods and other information not readily available to the public (herein "Confidential Information") that must be maintained  in strict confidence in order for the Company to protect its business and its competitive position in the marketplace. Unless otherwise authorized in writing by the Company, you agree that you will not directly or indirectly publish or disclose any Confidential Information to any competitor or other person outside the Company, and you will not remove from the premises of the Company or use for your own benefit or otherwise appropriate or copy any Confidential Information. This applies whether or not you developed the Confidential Information.

b. You agree that you shall not, either on your own account or for any person, firm, or company, solicit, interfere with, or induce, or attempt to induce, any employee of the Company or any of its parents, subsidiaries, or affiliates to leave their employment or to breach their employment agreement, if any.

c. Additionally, you agree not to make any disparaging or derogatory remarks orally or in writing, directly or through others, about the conduct or character of the Company or any of its parents, subsidiaries, or affiliates, or their agents, employees, officers, directors, successors, or assigns.

## 9.  Confidentiality of Severance Agreement

You warrant that you and your agents will not disclose, disseminate, and/or publicize, or cause or permit to be disclosed, disseminated, or publicized the existence of this Severance Agreement, or any of the terms of this Severance Agreement, except that you may disclose them to your immediate family, and to your financial, tax, and legal advisors, provided that each such individual agrees not to reveal such information further, and to any federal, state, or local tax authorities, to enforce this Severance Agreement, and as required by law.

## 10. Return of Company Materials

You will promptly return all "Company Materials" that you may have in your possession to me. "Company Materials" include all assets, files, documents, business records, notes, designs, data, software, manuals, equipment, keys and keycards, credit cards, ID badges, passwords, and any other Company owned items of any nature (regardless of the medium in which they are contained,

Scanned with CamScanner

and regardless of how they entered your possession or control) that are in your possession or control. You will retain no copies, excerpts, or summaries of any Company Materials.

11.    Age Discrimination in Employment Act General Release

With respect to any claims that you have under the Age Discrimination in Employment Act (herein "ADEA Claims"), you confirm that the Company has hereby advised you in writing of the following:

a. that this General Release does not waive rights or claims that may arise after the date it is executed;

b. that you are waiving the rights and claims you may have in exchange for  consideration in addition to things of value to which you are already entitled;

c. that you should consider the terms of this General Release and consult with an attorney of your choice before signing this General Release;

d. that you have at least twenty-one (21) days from the day you receive this General Release to consider this General Release before signing it, and you understand and agree that any changes made to this General Release in the twenty-one (21) days during which you may consider this General Release, whether material or not, will not restart the running of the twenty-one (21) day period;

e. that after you have signed this General Release, with respect to the release of your ADEA Claims, you will have at least seven (7) calendar days in which to revoke this General Release, and that the General Release of your ADEA Claims shall not become effective or enforceable with respect to your ADEA Claims until the revocation period expires. If you choose to revoke this General Release, you will do so by signing a revocation letter and delivering it to:

Aquachile, Inc.
5200 Blue Lagoon Boulevard
Suite 750
Miami, FL 33126
Attention: Jeffrey Bailey, General Counsel

To be effective, you understand that a revocation letter must be delivered to the Company by the close of business on the last day of the revocation period. You understand that if you choose to revoke this General Release, you will lose all benefits of this General Release.

f. that if you sign this General Release prior to the expiration of the twenty-one (21) day review period, you hereby waive any rights that you may have for any remaining time available to you under any law to review this General Release. You confirm that you have freely and voluntarily chosen to accept the General Release at this time.

g. that you understand that your right of revocation set forth in this Section 11 applies only to the release of any ADEA Claims. If you elect to revoke this General Release for ADEA Claims, the Company will have the option to choose to enforce this General Release, excluding unwaived ADEA Claims. You acknowledge that this General Release fully complies with the requirements of 29 U.S.C. Section 626(f), and all other legal requirements necessary for its validity and enforceability. Such revocation of the release of any ADEA Claims shall not affect the validity of the General Release of any other claims.

4

12. __Miscellaneous__

a. This Severance Agreement contains all the terms and conditions agreed upon by the parties hereto regarding the subject matter of this Severance Agreement. Any prior agreements, promises, negotiations, or representations, either oral or written, relating to the subject matter of this Severance Agreement not expressly set forth in this Severance Agreement are of no force and effect. Neither Releasees nor you have relied on any promise except those set forth in this Severance Agreement. Notwithstanding the foregoing, nothing set forth herein shall limit or restrict any covenant of non-competition or confidentiality that you have previously agreed to in connection with your employment with the Company.

b. None of the provisions, terms, or clauses of this Severance Agreement may be changed except by a writing signed by both you and the Company. Any waiver of any term or provision of this Severance Agreement must be in writing and be signed by the party granting the waiver. If any of the provisions, terms, or clauses of this Severance Agreement are declared illegal, unenforceable, or ineffective, those provisions, terms, and clauses shall be deemed severable, such that all other provisions, terms and clauses of this Severance Agreement shall remain valid and binding upon both parties.

c. You agree that you have not instituted or filed, and if you have you shall immediately dismiss and/or withdraw with prejudice, any and all complaints, charges, claims, suits, and actions, whether civil, administrative, workers' compensation or criminal against the Releasees or any of them in any court or administrative forum or before any governmental agency or entity. You represent that you will not hereafter file any complaints, charges, claims, suits or actions, whether civil, administrative, workers' compensation, or criminal against the Releasees or any of them with any administrative, local, state, federal or governmental entity, agency, board, or court based on any action or inaction by the Releasees which occurred on or before the effective date of this Severance Agreement, including, but not limited to, any claim directly or indirectly related to, or in any way arising from your employment with and/or termination of such employment from the Company or any of its parents, subsidiaries, affiliates, successors, or assigns or any events or actions directly or indirectly relating thereto.

d. You understand and agree that this Severance Agreement may be executed in a number of identical counterparts, each of which will be deemed an original for all purposes.

e. You further agree not to institute any actions or lawsuits, or otherwise assert or attempt to assert any claim or causes of action, whether known or unknown, against the Releasees, nor against any persons acting by, through or under or in concert with them in their official or individual capacities, past or present.

f. It is understood and agreed that the above-recited consideration is provided by Releasees, and is accepted by you in settlement and compromise of disputed claims that you may hold or now have, the validity of which are expressly denied by Releasees, and that the provision of such consideration is not an admission of liability by Releasees.

g. You confirm that before signing this Severance Agreement, you had adequate time to consider this Severance Agreement and to consult with anyone of your choosing (including an attorney) concerning this Severance Agreement.

h. You understand that this Severance Agreement will be accepted by Releasees in Florida and will be governed by Florida law, without regard to its conflict of law rules.

5

Scanned with CamScanner

i. As a direct inducement to Releasees to enter into this Severance Agreement you make the following representations and warranties to Releasees, which representations and warranties are expressly relied on by Releasees in entering into this Severance Agreement and which shall survive the execution of this Severance Agreement by you:

    1.   that no promise, inducement, or agreement not herein expressed was made or offered to you for this settlement, and that this Severance Agreement is executed by you without reliance upon any agreement, restriction, or consideration, except those agreements, restrictions, and other consideration expressly stated in this Severance Agreement; and

    2.   that you performed an independent investigation and need no additional information to assess the advantages and disadvantages of the Severance Agreement and that you are not expecting Releasees to disclose any information they might otherwise have.

j. This Severance Agreement and the covenants contained herein shall be binding on and inure to the benefit of Releasees and the assigns, heirs, executors, and administrators of Releasees and the predecessors, successors, and assigns of Releasees and each past or present parent, subsidiary, affiliate, employee, agent, representative, officer, director, insurer, attorney, and stockholder of Releasees.

k. This Severance Agreement is to be interpreted in accordance with its fair meaning and not strictly for or against Releasees or you. This Severance Agreement will not be construed more strictly against one party than against the other merely by virtue of the fact that it may have been prepared by counsel for one of the parties, it being recognized that all parties have contributed substantially and materially to the preparation of this Severance Agreement.

l. You confirm that you have not assigned or transferred, and will not assign or transfer, any of the claims being released under this Severance Agreement to any other person or entity. You agree to indemnify and hold the Releasees, and each of them, harmless from any liability, claims, demands, damages, costs, expenses, and attorney's fees incurred by the Releasees, or any of them, as a result of any person asserting any such assignment or transfer. You understand and agree that if you hereafter commence, join in, or in any manner seek relief through any suit arising out of, based on, or directly or indirectly relating to any of the claims, or in any manner assert against the Releasees, or any of them, any of the claims, then you will pay to the Releasees, and each of them, in addition to any other damages caused to the Releasees thereby, all attorney's fees incurred by the Releasees in defending or otherwise responding to such suit or claim, to the extent permitted under applicable law.

m. By signing below, you confirm that you:

    1.  have thoroughly and carefully read this Severance Agreement;

    2.  are aware of your rights concerning your employment with and/or termination of such employment from Releasees or any of their parents, subsidiaries, affiliates, successors, or assigns;

    3.  are competent to execute this Severance Agreement;

    4.  fully understand all of the terms of this Severance Agreement and their effect;

    5.  agree with everything stated in this Severance Agreement;

6

Scanned with CamScanner

6. know that you are giving up important rights;

7. are signing this Severance Agreement voluntarily of your own free will; and

8. fully understand that the meaning and intent of this Severance Agreement is that it constitutes a complete general release.

n.  You further understand and confirm that after you sign this Severance Agreement, it will be final and binding on the Releasees and you and will be legally enforceable.

o.  YOU HEREBY ACKNOWLEDGE THAT YOU ARE EXECUTING THIS SEVERANCE AGREEMENT VOLUNTARILY. YOU ACKNOWLEDGE THAT YOU HAVE A FULL TEN (10) DAYS FROM THE DATE HEREOF TO REVIEW AND TO OBTAIN ADVICE OF COUNSEL REGARDING ITS TERMS. YOU MAY EXECUTE AND RETURN THIS SEVERANCE AGREEMENT TO THE COMPANY AT ANY TIME PRIOR TO THE RUNNING OF THE TEN (10) DAY REVIEW PERIOD. IF YOU FAIL TO EXECUTE THE SEVERANCE AGREEMENT BY THE END OF THE REVIEW PERIOD, YOU WILL FORFEIT ALL SEVERANCE PAYMENTS THAT HAVE BEEN PAID OR ARE YET TO BE PAID TO YOU BY THE COMPANY.

ALL BENEFITS PROVIDED TO YOU DURING THE INTERIM PERIOD BETWEEN EXECUTION AND FAILURE TO EXECUTE THE SEVERANCE AGREEMENT WITHIN TEN (10) DAYS OF THE DATE HEREOF, MUST BE RETURNED TO THE COMPANY IMMEDIATELY WITHOUT DELAY.

I hereby acknowledge and agree to all the terms and conditions as set forth above.

Sincerely,

Raul Squadritto
Regional Director
AquaChile, Inc./RFA, Inc.

Name: Silvana Agoglia

Scanned with CamScanner

# EXHIBIT C

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☒ FEPA ☒ EEOC | |

| Florida Commission On Human Relations | | and EEOC |
|---|---|---|
| State or local Agency, if any | | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **Ms. Silvana Agoglia** | | 1981 |

| Street Address | City, State and ZIP Code |
|---|---|
| | **Miami, FL 33176** |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **Aquachile Inc** | **30+** | **(786) 522-8400** |

| Street Address | City, State and ZIP Code |
|---|---|
| **5200 Blue Lagoon Drive #750** | **Miami, FL 33126** |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE   ☐ COLOR   ☒ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN
☒ RETALIATION   ☐ AGE   ☐ DISABILITY   ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **1/22/2020**   Latest **2/1/2020**

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

**Statement of Harm:**

I began working for AquaChile in June 2019. My offer letter clearly set forth my hours as 8:30 a.m. to 5:00 p.m. Monday through Friday for a salaried position in Customer Service. I did not qualify for a salaried position. Immediately upon my hire, I and other female employees were forced to work nearly double the hours we signed contracts for (approximately 70 hours/week). While working for AquaChile, I was treated terribly by my male Supervisors. The Supervisors talked down to me, forced me to work unsustainable hours, and forced me to work on holidays. Similarly situated male employees were not subject to these terms and conditions of employment. When the company was made aware that they were illegally paying me and several other women and they could no longer take advantage of me, they terminated my employment with no legitimate reason. I was an exemplary employee.

**Statement of Discrimination:**

I believe I have been discriminated against because of my sex in violation of Title VII of the Civil Rights Act of 1964 and the Florida Civil Rights Act of 1992.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 9/14/2020 <br> Date   Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

Scanned with CamScanner

# EXHIBIT D

EEOC Form 161 (11/2020)

**U.S. E**QUAL **E**MPLOYMENT **O**PPORTUNITY **C**OMMISSION

**D**ISMISSAL AND **N**OTICE OF **R**IGHTS

| To: | Silvana Agoglia<br>c/o Christopher Fennell, Esquire<br>Spielberger Law Group<br>4890 Kennedy Blvd., Suite 950<br>Tampa, Florida 33609 | From: | Miami District Office<br>Miami Tower, 100 S E 2nd Street<br>Suite 1500<br>Miami, FL 33131 |
|---|---|---|---|

| ☐ | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) | |
|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 15D-2020-01256 | **Maria E. de Paz**<br>**State & Local Coordinator** | **(786) 648-5826** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☐ The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

☒ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

**- NOTICE OF SUIT RIGHTS -**
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*Maria E. de Paz* for

**Paul V. Valenti,**
**District Director**

November 30, 2021

*(Date Issued)*

Enclosures(s)

cc:

**Aquachile Inc.**
**c/o Jeffrey Bailey, Esquire**
**P.O. Box 14-0848**
**Coral Gables, Florida 33114**

Enclosure with EEOC
Form 161 (11/2020)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice.  Therefore, you should keep a record of this date.  Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost.  If you intend to consult an attorney, you should do so promptly.  Give your attorney a copy of this Notice, and its envelope or record of receipt, and tell him or her the date you received it.  Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *issued* to you (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction.  (Usually, the appropriate State court is the general civil trial court.)  Whether you file in Federal or State court is a matter for you to decide after talking to your attorney.  Filing this Notice is not enough.  You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief.  Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge.  Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office.  If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before** you file suit may not be collectible.  For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008.  This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.  Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer.  Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney).  Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case.  If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice).  While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case.  Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months** of this Notice.  (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

## CONSENT TO JOIN FORM

1.      I consent to be a party plaintiff in a lawsuit against Defendant, **Aquachile Inc.**, as well as any related entities and individuals, to seek recovery for violations of the Fair Labor Standards Act (FLSA) pursuant to 29 U.S.C. §216(b) *et seq.*

2.      I hereby designate the Law Office of Keith M. Stern, P.A. to represent me in bringing my FLSA claims and to make decisions on my behalf concerning the litigation and settlement of these claims.  I agree to be bound by any settlement approved by the Court and any adjudication by the Court, whether it is favorable or unfavorable.

3.      I also consent to join any other related action against Defendant, or any other potentially responsible parties, to assert my FLSA claims and for this Consent Form to be filed in any such action.

Silvana Agoglia (Jan 31, 2022 23:10 EST)

**Silvana Agoglia**